AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Calvin Nathaniel Petersen,<br><br>Defendant(s) | ) ) ) ) ) ) ) ) Case No. 20-6011-SNOW |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **May 20, 2018, and October 16, 2018** in the county of **Broward** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with commerce by threats or violence (Count 1) |
| 18 U.S.C. § 924(c)(1)(A) | Brandishing a firearm in relation to a crime of violence (Count 2) |
| 18 U.S.C. § 1951(a) | Interference with commerce by threats or violence (Count 3) |
| 18 U.S.C. § 924(c)(1)(A) | Brandishing a firearm in relation to a crime of violence (Count 4) |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Ryan Dreibelbis, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/90/20

_____
Judge's signature

City and state: Fort Lauderdale, Florida

Lurana S. Snow, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan Dreibelbis, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have served in this capacity since February 2018. Currently, I am assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division and have been at this location since May 2019. My duties involve investigating bank robberies, Hobbs Act robberies, extortion, kidnappings, and other violations of federal law. Prior to moving to the Miami Division, I served as a Special Agent for the FBI's New York Division where I investigated narcotics trafficking violations.

2. I make this Affidavit in support of a criminal complaint charging **CALVIN NATHANIEL PETERSEN** with two counts of violating Title 18, United States Code, Section 1951(a) (interference with commerce by threats or violence), and two counts of violating Title 18, United States Code, Section 924(c)(1)(A) (brandishing a firearm in relation to a crime of violence).

3. I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

### PROBABLE CAUSE

4. On or about May 20, 2018, at approximately 8:32 a.m., a black male ("perpetrator"), believed to be PETERSEN based on information described below, entered the Kwik Stop East Inc. ("Kwik Stop"), located at 2101 E. Commercial Boulevard, Fort Lauderdale,

Florida. Kwik Stop is a business that conducts business in and affecting interstate commerce. The perpetrator was wearing gloves and a t-shirt over his face, and brandishing a firearm. The perpetrator jumped over the counter, grabbed the clerk, and forced the clerk to the ground in front of the cash register. The perpetrator then ransacked the cash register area, removing approximately five hundred dollars ($500.00) in United States currency before moving the clerk to a rear room. During the robbery, a civilian entered the business. Upon seeing the civilian, the perpetrator approached him/her, took fifteen dollars ($15.00) in United States currency and house keys from the civilian, and fled the scene. During the robbery, the t-shirt covering the perpetrator's face fell, revealing his facial features and beard in detail. This appearance resembled PETERSEN. Kwik Stop's video surveillance system captured the robbery.

5. On or about August 17, 2018, at approximately 11:55 p.m., a black male ("perpetrator"), believed to be PETERSEN based on the information described below, entered the MAK Convenience, located at 4400 N. Federal Highway, Fort Lauderdale, Florida. MAK Convenience is a business that conducts business in and affecting interstate commerce. The perpetrator was wearing a white long sleeve shirt, black pants, black shoes, orange gloves, and a black shirt covering his face. Upon entering the store, the perpetrator walked around the counter and pointed a black semi-automatic handgun at the cashier. The perpetrator ordered the cashier to open the register, which he/she did. The perpetrator subsequently ordered the cashier to lay on the ground. In addition to the register, the perpetrator located a cigar box containing additional United States currency. The total loss was approximately one thousand five hundred dollars ($1,500.00) in United States currency. The perpetrator then took the cashier's cell phone and ordered the cashier to go into the bathroom before fleeing the scene. Law enforcement

ultimately recovered the cell phone from the south side of the business parking lot. MAK Convenience's video surveillance system captured the robbery.

6. On or about August 25, 2018, at approximately 11:18 p.m., an unknown black male ("perpetrator"), believed to be PETERSEN based on the information described below, entered the All in One, located at 3801 NW 9th Ave, Oakland Park, Florida. All in One is a business that conducts business in and affecting interstate commerce. The perpetrator was wearing dark sneakers, dark pants, a white long sleeve shirt, a black shirt as a mask, and orange gloves. The perpetrator brandished a black handgun at one of the clerks ("Clerk 1"), and ordered Clerk 1 to open the register. The perpetrator then forced Clerk 1 to lay down on the floor while he searched all the shelves under the register. The perpetrator then entered the backroom and encountered another clerk ("Clerk 2"). The perpetrator looked at Clerk 2 and stated, "You have five (5) seconds to give me the money" before he began counting down. He later told Clerk 2 to "give me the money or I will shoot you." After Clerk 2 had given the perpetrator all of the money of which Clerk 2 was aware, the perpetrator searched through boxes and shelves in the room until he found a small cigar box with approximately one thousand dollars ($1,000) in United States currency. The perpetrator then took Clerk 2's iPhone, forced Clerk 1 into the bathroom, and fled the business. Law enforcement recovered Clerk 2's iPhone outside of the business. The total loss to the store was approximately one thousand nine hundred dollars ($1,900.00) in United States currency. All In One's video surveillance system captured the robbery.

7. On or about September 10, 2018, at approximately 8:15 p.m., a black male ("perpetrator"), believed to be PETERSEN based on the information described below, entered the MAK Convenience, located at 4400 N. Federal Highway, Fort Lauderdale, Florida. The

3

perpetrator had robbed this same location on or about August 17, 2018 (see Paragraph 5). The perpetrator was wearing a white long sleeve shirt, black pants, black shoes, blue gloves, and a black shirt covering his face. Upon entering the store, the perpetrator jumped over the counter and pointed a black semi-automatic handgun at the cashier. The perpetrator directed the cashier to open the register. After the cashier complied, the perpetrator took approximately one hundred dollars ($100.00) in United States currency from the cash register. The perpetrator then searched under the counter and located a box containing an additional two hundred dollars ($200.00) in United States currency. The perpetrator then took the cashier's wallet and removed one hundred fifty dollars ($150.00) in United States currency. After the perpetrator directed the cashier to go into the bathroom, the cashier observed the perpetrator stealing his/her cell phone prior to fleeing. Law enforcement later recovered the cell phone from a sink behind the counter. The total loss was approximately four hundred fifty dollars ($450.00) in United States currency. MAK Convenience's video surveillance system captured the robbery.

8. On or about September 14, 2018, at approximately 7:26 p.m., a black male ("perpetrator") believed to be PETERSEN based on the information described below, entered the same Kwik Stop that experienced a robbery on or about May 20, 2018 (see Paragraph 4). The cashier observed the perpetrator approach the front door of the business wearing a white long sleeve shirt, black pants, a black shirt over his face, white gloves, and a black firearm in his waistband. The cashier believed the perpetrator was going to rob the business and did not allow him to enter the business. After attempting and failing to enter the Kwik Stop, the perpetrator fled the scene. Kwik Stop digital video security cameras recorded the attempted robbery. Surveillance footage shows the perpetrator entering a newer model Dodge Charger, charcoal

4

grey in color, no window tint, bearing a small barcode sticker in the rear passenger window, which law enforcement believed to depict a rental vehicle.

9. On or about September 14, 2018, at approximately 8:30 p.m., a black male ("perpetrator"), believed to be PETERSEN, entered the Star America Grocery, located at 2656 E. Oakland Park Blvd, Fort Lauderdale, Florida. Star America Grocery is a business that conducts business in and affecting interstate commerce. The perpetrator was wearing a long sleeve white shirt, dark jeans, black shoes, and white gloves – consistent with the attire worn by the perpetrator during the attempted robbery of the Kwik Stop earlier that day (see Paragraph 8). Upon entering, the perpetrator brandished a black handgun, leapt over the counter, and forced the clerk to open the register. The perpetrator stole approximately two thousand dollars ($2,000.00) in United States currency before directing the clerk to open the safe. The clerk explained that the safe was no longer in use, adding that he/she did not have access to it. The perpetrator directed the clerk to open the second register. Although the clerk opened it, there was nothing inside. The perpetrator then put the gun to the clerk's head and searched his/her person, removing a cellphone and approximately three hundred dollars ($300.00) in United States currency from the clerk's wallet. The perpetrator then directed the clerk into the manager's office. After searching for another safe, the perpetrator fled.

10. Law enforcement determined that Enterprise in the Fort Lauderdale/Miami area was the only rental company in the area that allowed customers to rent a charcoal gray Dodge Charger, similar to the one that the perpetrator used when he departed from the scene of the Kwik Stop on or about September 14, 2018 (see Paragraph 8). Enterprise provided law enforcement with a list of customers who rented that type of vehicle on September 14, 2018. PETERSEN was one of the listed customers. The rental agreement associated with the vehicle in

5

question listed PETERSEN by his first and last name, and bore his signature and initials. PETERSEN's failure to return the vehicle on time resulted in Enterprise reporting it stolen.

11. On or about September 20, 2018, in the evening hours, law enforcement located a 2018 Dodge Charger, with South Carolina license plate NYZ172, driving in the area of the aforementioned robberies. Law enforcement confirmed that PETERSEN rented this vehicle. Law enforcement followed the Dodge Charger for approximately one and a half hours. During that time, the Dodge Charger drove in the area of the aforementioned robberies and parked in close proximity to a number of commercial businesses, including those previously robbed. The vehicle made no stops or purchases at any of the businesses. The vehicle made U-turns and other unnecessary turns, drove in circles, and drove directly through business parking lots. Based on your affiant's training and experience, such abnormal driving patterns are consistent with counter surveillance tactics utilized by those engaged in criminal activity in an effort to determine whether any law enforcement or third party vehicles were following the vehicle.

12. On or about September 21, 2018, at approximately 8:00 p.m., law enforcement initiated a surveillance detail and located the aforementioned 2018 Dodge Charger in the general vicinity of the robberies, and PETERSEN's current and previous residences. The vehicle again spent time driving in the area of the robberies and parking in close proximity to a number of commercial businesses, including those previously robbed. The vehicle made a number of stops at various residences and a bar. Law enforcement positively identified PETERSEN as the driver of the vehicle. Surveillance continued until PETERSEN returned to his Fort Lauderdale address. That same day, law enforcement obtained a state search warrant in order to track the 2018 Dodge Charger. The next day, at approximately 4:00 a.m., law enforcement installed the tracker. The vehicle continued to use counter-surveillance detection tactics.

13. Law enforcement conducted surveillance of PETERSEN from on or about September 21, 2018, until on or about October 16, 2018. During this time, law enforcement observed PETERSEN wearing a variety of different clothing, including a white long sleeve shirt, black pants, and black shoes with a tan sole, as observed in previous robberies. Law enforcement also observed PETERSEN wearing a red hooded sweatshirt, black pants, and black shoes on numerous occasions.

14. On or about October 16, 2018, at approximately 4:12 p.m., an armed robbery occurred outside of a residence in Fort Lauderdale, Florida. The victim, H.T., arrived at his/her residence after withdrawing eighty thousand dollars ($80,000.00) in United States currency from a nearby bank for use in his check-cashing business, Taru Thakkar Inc. d/b/a "A Discount Liquor" ("A Discount Liquor"). A Discount Liquor is a business that conducts business in and affecting interstate commerce. As H.T. was exiting his/her vehicle, a black male ("perpetrator"), later determined to be PETERSEN, exited a red Nissan passenger car and approached H.T. The perpetrator was wearing a black mask, a red hooded sweatshirt, black pants, blue latex gloves, and black shoes with tan soles. The perpetrator brandished a firearm and forcefully took the bag carrying the $80,000.00 from H.T.'s person, even though H.T. kept pleading for the perpetrator not to take it. After yanking the bag from H.T., the perpetrator fled the scene in the red Nissan passenger car. H.T.'s front door Ring doorbell system captured the robbery.

15. Law enforcement reviewed the GPS logs of the 2018 Dodge Charger from the day that the perpetrator robbed H.T. and found that it was in Pompano Beach, Florida, at the time of H.T.'s robbery. Law enforcement later conducted a drive-by of the area that the GPS logs identified as the 2018 Dodge Charger's location and observed a red Nissan Altima – similar to

7

the one used by the perpetrator at the time of H.T.'s robbery (see Paragraph 14) – parked at the same residence.

16. On or about October 16, 2018, after H.T.'s robbery, law enforcement arrested PETERSEN for possession of marijuana and rental vehicle theft. At the time of his arrest, PETERSEN identified his phone number as XXX-XXX-8934. During a post-*Miranda* interview, PETERSEN admitted to driving "a red car" and a "red Nissan Altima" earlier in the day.

17. Law enforcement executed a state search warrant on the Nissan Altima and seized blue latex gloves from the interior of the vehicle. Law enforcement submitted the gloves for DNA analysis. The results showed "very strong support" that PETERSEN's DNA was located on the exterior of the gloves. The gloves also contained H.T.'s DNA.

18. Law enforcement obtained a federal search warrant (18-6451-HUNT) for cell-site data associated with a phone number believed to belong to PETERSEN and ultimately confirmed by PETERSEN to belong to him (see Paragraph 16). The phone number was XXX-XXX-8934. Cell-site data showed the following:

- August 16, 2018: Petersen was at or in the vicinity of MAK Convenience at 6:30 PM, 8:38 PM, and 10:49 PM. This is the day preceding the first MAK Convenience robbery (see Paragraph 5).
- August 17, 2018: Petersen was at or in the vicinity of MAK Convenience at 8:30 PM and 8:54 PM. This is the day of the MAK Convenience robbery (see Paragraph 5), which occurred at 11:55 PM.
- August 25, 2018: Petersen was in the vicinity of the All In One at approximately 7:39 PM. The robbery occurred that day at approximately 11:18 PM (see Paragraph 6).

## CONCLUSION

I respectfully submit that probable cause exists for the following:

- Count 1 – On or about May 20, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 1951(a) (interference with commerce by threats or violence);

- Count 2 – On or about May 20, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 924(c)(1)(A) (brandishing a firearm in relation to a crime of violence);

- Count 3 – On or about October 16, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 1951(a) (interference with commerce by threats or violence); and

- Count 4 – On or about October 16, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 924(c)(1)(A) (brandishing a firearm in relation to a crime of violence).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
SPECIAL AGENT RYAN DREIBELBIS
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn before me
this ____ day of January 2020.

_____
HONORABLE LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

9

## CONCLUSION

I respectfully submit that probable cause exists for the following:

- Count 1 – On or about May 20, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 1951(a) (interference with commerce by threats or violence);

- Count 2 – On or about May 20, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 924(c)(1)(A) (brandishing a firearm in relation to a crime of violence);

- Count 3 – On or about October 16, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 1951(a) (interference with commerce by threats or violence); and

- Count 4 – On or about October 16, 2018, **CALVIN NATHANIEL PETERSEN** committed a violation of Title 18, United States Code, Section 924(c)(1)(A) (brandishing a firearm in relation to a crime of violence).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

SPECIAL AGENT RYAN DREIBELBIS
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn before me
this 10 day of January 2020.

HONORABLE LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE